LEWISOHN IMPORTING & TRADING CO. *v.* UNITED STATES (No. 1323).[1]

VALIDITY OF REAPPRAISEMENT.

The feathers of the importation were bought at public auction in London on terms that allowed a discount for payment in cash, and the invoice showed the total value less the discount for cash. Whether this discount was to be included in the dutiable value of the merchandise was a question of law, not one of fact. The case is ruled by Arthur *v.* Goddard (96 U. S., 145).

United States Court of Customs Appeals, March 25, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34323 (T. D. 34026).

[Reversed.]

*Hatch & Clute* for appellant.

*William L. Wemple,* Assistant Attorney General (*William A. Robertson,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal brings up for determination the question of the legality of a reappraisement proceeding. The importation was one of feathers purchased at public auction held by the General Produce Brokers' Association in London. The invoice, in so far as pertinent, recites:

| | | | |
|---|---:|---:|---:|
| Total invoice value | £7,990 | 10 | 0 |
| Lot money, 129 lots at 1s. | 6 | 9 | 0 |
| Brokerage ½ per cent | 39 | 19 | 0 |
| | 8,036 | 18 | 0 |
| Less cash discount, 14 days, at 5 per cent per annum | 15 | 8 | 3 |
| | 8,021 | 9 | 9 |

(Appraiser's notation:) Appraiser advances to make market value by disallowing this deduction.

Without indulging unwarranted incredulity these facts alone, which are corroborated by every other part of the record, plainly evidence a certain gross price paid, from which a cash discount was in fact and on invoice and entry deducted and the net price stated on the invoice as the invoice price, and so entered, and thus the amount and relation of the cash discount is clearly fixed by the record. Whether or not the action of the single general appraiser is considered, the invoice and above matters were properly before the board on appraisement.

The goods were entered at the value less the cash discount. The local appraiser advanced the invoice by disallowing this discount. Upon appeal to the single general appraiser that action was reversed. Upon further appeal by the Government to the board of three general appraisers the action of the single general appraiser was reversed and

---

[1] Reported in T. D. 34329 (26 Treas. Dec., 561).

that of the local appraiser affirmed. The notation made by the board, as recited in the record, was, in so far as pertinent:

Crude feathers. *Prices as invoiced.* Add lot money and brokerage as invoiced. Add cases as entered. Add pkg. and warehouse del'y as entered.

On reliquidation pursuant to this board decision the importers protested, alleging that "the Board of United States General Appraisers proceeded upon a wrong theory and contrary to law in disallowing the 5 per cent discount deducted on entry." The board overruled this protest in the following language:

There is nothing in the record before us which in any way indicates that the board acted in an illegal or unlawful manner, and without proof that they so acted the importer can not prevail here.

Subsection 13 of section 28 of said act, which was in force when the above-mentioned proceedings took place, provides that a reappraisement by the board becomes final and conclusive against all persons interested therein and is not subject to review in any manner for any cause in any tribunal or court.

The Court of Customs Appeals in Wolff *v.* United States (1 Ct. Cust. Appls., 181; T. D. 31217), affirming ruling of the board in G. A. 6888 (T. D. 29628), held that a finding by a board of general appraisers on the actual market value of merchandise is conclusive against all parties and can not be disturbed.

The protests are accordingly overruled.

These recitations make it plain that the Board of General Appraisers in deciding the protest deemed the addition of the cash discount by the board of three general appraisers in the re-reappraisement proceeding the determination of a question of fact. The theory of the Government upon this appeal, both in its brief and at the oral argument, is likewise founded.

At the hearing before the re-reappraisement board the only facts submitted to them was the record in the reappraisement cases, consisting of the invoice, as above quoted, and the entry with the remaining portions of the record below, together with a copy of the rules and regulations of the General Produce Brokers of London governing the sales of feathers and the testimony of one John Ostermann. The board certifies that that "is all the evidence offered or received in the case."

It is made to appear from the record that the feathers, which are sold at public auction, are sold upon the terms that if paid for within 14 days after the Saturday following the sale there is a cash discount at the rate of 5 per cent per annum. Unless paid for within said 14 days the discount is not allowed. All of the sales of feathers made at public auction by this association at London are made upon this basis and in conformity with the said rules and regulations.

We think it satisfactorily appears from the record in the case of these importations that the importers availed themselves by immediate payment of the cash discount and it was so entered upon the invoice and deducted accordingly. While in the briefs and at the

oral argument allied questions were argued, this record presents for decision but one question. That question is, In such cases where immediate payment is made and the cash discount allowed, what is the dutiable value of the merchandise? Allied therewith, but not presented for decision in this case, but argued in the briefs and at the oral argument is the question, What would be the dutiable value in a case where cash was not paid but advantage was taken of the 14 day's limitation? That question, though discussed, is not presented by this record for decision, and we have perhaps the simpler issue, as stated, for decision.

Primarily, is the question whether the allowing or disallowing of this discount by the appraising officers is the finding of a fact or the decision of a question of law. The Board of General Appraisers, in its opinion, relying upon the authority of a decision of this court in Wolff v. United States (1 Ct. Cust. Appls., 181; T. D. 31217), held this determination to be one of fact. The Government in its brief and at the oral argument took the same position. Were this true, an affirmance of the board would necessarily follow. We do not, however, take that view of the case. The allowance or disallowance of a cash discount, upon basic value of merchandise, in the nature of interest, dependent in amount upon the time of payment, and whether or not the same enters into the dutiable value of the merchandise, is a matter of legal determination.

The precise question was involved in Arthur v. Goddard (96 U. S., 145), decided by the Supreme Court. The question there involved was a cash discount of 2 per cent. Of this the Supreme Court said:

In this case the appraisers did not profess to appraise or ascertain the market value of the goods. They simply gave a construction to the invoice; they decided its legal effect to be that 8,670.25 francs is there declared to be the market value of the goods. They held as a legal proposition that, in fixing the value, the discount of 2 per cent should not be allowed, and as a result from this that 8,670.25 francs, and not 8,494.95 francs, was the value.

There seems to be no distinction in principle between the action of the appraisers in that case and in this. The facts being made clear by the record, the appraising board simply recites in its findings, "Prices as invoiced." This was not a finding of fact that the actual market value of the merchandise was of one valuation or another. That is to say, it is neither a finding that 8,036 pounds 18 shillings nor that 8,021 pounds 9 shillings 9 pence, both of which are recited in the invoice, is the actual market value of the merchandise, but a legal determination; if anything more than a recital of the correctness of the invoice, that the discount should be included within the dutiable value of the merchandise.

We think that decision of the Supreme Court rules the question in this case, whether or not the allowing or disallowing of the discount is a determination of a question of fact or the decision of a

legal principle. Being of the opinion that it is of the latter character jurisdiction vests in the court for the determination of whether or not this cash discount should or should not be added in order to make up the dutiable value of the merchandise. United States *v.* Spingarn Bros. (5 Ct. Cust. Appls., —; T. D. 34002); Arthur *v.* Goddard (96 U. S., 145).

The question before the court then is, in the cases of sales such as these, which are at public auction and to the highest bidder, where the goods are freely offered to all comers upon the same terms, and are sold and delivered to whomsoever purchases and pays cash at a price represented by the knockdown price at the auction less 5 per cent per annum for cash, what is the dutiable value of such merchandise? We think that question affecting only a cash transaction, such as the record discloses this sale and purchase to have been, is ruled by the decision of the Supreme Court in the case cited, *supra*, Arthur *v.* Goddard. The case was different essentially from Ballard *et al. v.* Thomas (19 How., 60 U. S., 382), as set forth in the former decision. In that case the purchase price of the goods was 8,670.25 francs. A cash discount of 2 per cent was claimed and noted upon the invoice. The invoice likewise recited the net price of the goods to be 8,494.95 francs. The goods were entered at the net price. The court stated:

The actual value has been stated at 8,494.95 francs, and such was also the "invoice value." The entered or invoice value spoken of in the statute means the value as it is stated in or upon the invoice. That value was 8,494.95 francs. The value means the cash value. The price at 30 days' credit might be different, and the difference would probably be greatly increased by a credit of six months or a year, but the value or cost would still be the same. The difference would be chargeable to the credit and not to a difference in the value of the goods. That the price was to bear interest at 6 per cent until paid for, or at 60 per cent, had no influence upon the question of value. We think it quite clear that the net price is stated in this invoice to be the value of the goods, viz, 8,494.95 francs.

In that case as here both the gross and net values were set out in an invoice which clearly disclosed the exact terms of the sale and purchase. While there are some differences in the statute there under consideration and here, they are not such as in our opinion would affect such a transaction as this, which was for cash. Any further consideration is not here properly the subject of decision.

It seems pertinent to say that it is clear to us, however, that in this as in the case of Arthur *v.* Goddard, *supra*, where an invoice sets out the entire transaction—gross price, rate, and amount, and terms of discount claimed, and net price, all fully extended upon the invoice— that it can not be said that a finding of "prices as invoiced" is a finding of fact that one or the other of such invoice prices is actual market value, or that the determination of the board that such an invoiced discount should or should not be disallowed was other than as said in Arthur *v.* Goddard, *supra*, "a construction of the invoice."

*Reversed.*