INTERNATIONAL HARVEST HAT CO. *v.* UNITED STATES

No. 5045.—Invoices dated Tehuacan, Mexico, April 18, May 9, 1936.
Entered at St. Louis, Mo., May 11, 25, 1936.
Entry Nos. 1746, 1847.

Second Division, Appellate Term

(Decided November 4, 1940)

L. E. McCullough (*Tompkins & Tompkins*, associate counsel, *Allerton deC. Tompkins* of counsel) for the appellant.

Webster J. Oliver, Assistant Attorney General (*William J. Vitale*, special attorney), for the appellee.

Before TILSON, KINCHELOE, and DALLINGER, Judges

TILSON, Judge: This is an application for a review of the decision of the trial court, in which it found for the second time that the appraised values were the proper dutiable export values of certain so-called harvest hats, imported from Tehuacan, Mexico, by the appellant herein. The original decision of the trial court was reported · in Reap. Dec. 4335. The decision of the Second Division, reversing that decision and remanding the case to the trial court, was reported ·in Reap. Dec. 4594, and the second decision by the trial court, after remand, is reported in Reap. Dec. 4646.

The concluding paragraph of our remand reads as follows:

For the reasons stated, the decision and judgment of the trial court is reversed ·and the case remanded with instructions to admit in evidence the price lists, quotations, or affidavits, now marked exhibits 8, 9, 10, 11, and 12 for identification, and make new findings of fact after weighing said price lists, quotations, or affidavits, together with the other evidence in this case, and in the light of the other observations made in this opinion. Judgment will be rendered accordingly.

The above remand was, as stated in our opinion, based upon the ruling of the appellate court in the case of *United States* v. *Titan Shipping Co.*, 25 C. C. P. A. 403, in which case the same trial judge had refused to admit in evidence an affidavit. In the *Titan* case, *supra*, the appellate court said:

We agree with the appellate division that the trial court erred in excluding said affidavit, but hold that the appellate division, * * * should have reversed the trial court and remanded the cause for a new trial, or at least have directed the trial court to admit said affidavit in evidence and make new findings after weighing said affidavit, together with the other evidence in the case.

At the trial of this case the appraiser of merchandise at St. Louis, who appraised this merchandise, was asked:

Q. Will you please tell the court upon what figures or information you based your figures?—A. These figures are the prices that were used by San Martin in shipments of identical merchandise.

He also testified that those shipments were made by San Martin to the port of St. Louis at or about the same time of the shipments in these two cases. From the above testimony and other evidence in the record it is clear that the appraisement of the merchandise in these two cases was based upon the appraisement of merchandise shipped by

San Martin to the port of St. Louis. It is to be noted that the appraiser stated that the merchandise in these two cases and the merchandise shipped to St. Louis by San Martin, upon which the appraisement in this case was based, was identical merchandise.

The record shows that the importer in this case purchases and imports everything from the donkey's back, whether good, bad, or intermediate, except those with holes in them, and the importer grades such hats after he receives them. With reference to the hats shipped by San Martin the record shows:

Q. Does San Martin sort and grade his hats before he ships them to the United States?—A. Yes; he does.

Q. When you buy from San Martin do you receive the same kind of shipments as when you import direct from Castillo?—A. I would say his grading is better than the merchandise we receive from our own agent.

Q. Better in what way?—A. Better in quality, size, and more accurate according to pattern and ideas of what they should be.

Q. Does San Martin ship everything that is taken off the donkey's back?—A. No.

Q. Does your commissionaire ship you everything off the donkey's back?—A. Yes, everything except the hats with holes in.

The evidence further shows that Castillo's contract would not permit him to go out and buy only first-class hats. The record also establishes that these collectors of hats sell only for cash. Therefore, Castillo's prices represent purchases made for cash. With reference to San Martin's sales, the record shows:

Q. Are the hats which you purchase from San Martin purchased on credit?—A. Yes.

Q. Does he sell on credit?—A. He does.

Notwithstanding the testimony of the appraiser at St. Louis that the merchandise shipped to St. Louis by San Martin, upon which the appraiser stated he based his appraisement in these two cases, was identical with the merchandise before the court, the record shows otherwise, and there would, therefore, appear to be no basis for the appraiser appraising the instant merchandise at values which he placed upon other merchandise of a higher quality and grade. Hats that include everything that is taken off the donkey's back are in no sense of the word comparable to hats better in quality, size, and more accurate according to pattern and ideas of what they should be.

Exhibit 13 contains the following statement:

The books and records of Pascual San Martin were examined and revealed that Pascual San Martin sells palm leaf hat bodies to the Mexican-American Hat Co., Caradine Hat Co., and the Texas Harvest Hat Co., and others, and that the accounts of these concerns are carried open on Pascual San Martin's books for periods of nine months or so.

The action of the appraiser in basing the value he found for the instant merchandise upon the values he found for merchandise shipped

by San Martin appears to be contrary to the decision of the Supreme Court of the United States in *Arthur* v. *Goddard*, 96 U. S. 145, wherein it was held:

The value means the cash value. The price at thirty days' credit might be different, and the difference would probably be greatly increased by a credit of six months or a year, but the value or cost would still be the same. The difference would be chargeable to the credit, and not to a difference ·in the value of the goods.

See also *Lewisohn* v. *United States*, 5 Ct. Cust. Appls. 204; *in re Eisenbach Bros.*, T. D. 23558; and *Western Sausage & Provision Co.* v. *United States*, Cir. Reap. 2049.

When the testimony of the appraiser to the effect that he based the values he found for this merchandise upon the values he had found for merchandise shipped to St. Louis by San Martin, is considered in connection with the other testimony as to the dissimilarity of the two shipments and the testimony that the instant merchandise is purchased on a cash basis while the San Martin merchandise was purchased on a credit basis, it is apparent that all presumption in favor of the correctness of the action of the appraiser in this case is lost.

Referring to the price lists or quotations now marked exhibits 8, 9, 10, 11, and 12, the vice president of the importing concern testified without contradiction that the prices shown on these exhibits represent the actual prices in Tehuacan, and that on the basis of these price lists or quotations the importer herein purchased the hats in these two cases, in Tehuacan, Mexico. Explaining how these price lists or quotations are used in the purchase of these hats, the witness stated:

We are sent a price list as to what the prevailing market.is that week, and we will look over that price list and then tell him whether we want to buy at that price or whether we want to buy them for less. That is how he is guided as to whether he will buy hats for that period.

Attached to each of said price lists or quotations is the following affidavit, subscribed and sworn to before the Consul of the United States of America at Mexico City, Mexico:

I, Jose A. Castillo, Tehuacan, Pue, Mexico, do hereby state, under oath, that my business is that of Commissioner engaged in buying Mexican Hats for export on a commission and exporting same to the United States. I do further state, under oath, that the attached statement represents the prevailing wholesale market prices for Mexican Hats for export in usual wholesale quantities as of the date stated on this quotation.

Referring to the above exhibits, the trial court in its second opinion stated in part as follows:

A very common saying and one worthy of general acceptation, is that "A man convinced against his will is of the same opinion still." After a careful reading of

the opinion of the division aforesaid I am still convinced that Exhibits 8, 9, 10, 11, and 12 for Identification were properly excluded by me, * * *

It is manifest from a reading of the division's opinion that the reversal of my decision was based largely upon my refusal to admit the aforementioned exhibits, and yet, after renewed consideration of the affidavits and schedules attached thereto which constitute such exhibits, I cannot escape the conclusion that they are valueless as evidence upon which to base a finding of dutiable value of the merchandise at bar.

In the above holding we feel that the trial court was in error. As heretofore stated, the vice president of the importing concern testified that the prices shown on these exhibits represent the actual prices in Tehuacan, and that on the basis of these price lists or quotations the hats in these two cases were purchased. No good reason has been assigned why these exhibits should not be admitted in evidence, nor has any good reason been shown why they should not be considered and given proper weight and value as evidence in finding the proper dutiable values of the merchandise before us.

The trial court appears to have taken the position because the invoices in these two cases might indicate the hats had been sorted and graded and in some instances packed according to size, this was positive proof that "everything from the donkey's back, whether good, bad, or intermediate, except those with holes in them" were not shipped to the importer in this case, and included in these invoices.

It should be remembered that Castillo was the agent of the importer, stationed in Mexico for the purpose of buying and shipping these hats to his principal, the importer herein. One witness testified for the plaintiff that San Martin's "grading is better than the merchandise we receive from our own agent." The vice president of the importer herein testified that "We take all the hats that he buys." "That is all of the hats he buys from the Indians regardless of the grade or quality. We grade them ourselves." He also testified that Castillo purchases everything from the donkey's back and ships them to the importer herein, whether good, bad, or intermediate, except the hats with holes in them. The court might well take judicial notice of the fact that agents or commissionaires sort, grade, pack, and ship merchandise for their principals. There is no evidence before us to indicate that the agent in this case did not sort, grade, pack, and ship every hat that came off the donkey's back, except those with holes in them. The agent in this case did not, in sorting, grading, packing, and shipping, throw out any of the inferior quality or grade of hats and replace them with better quality or grade hats, but, after sorting and grading, packed and shipped every hat that came off the donkey's back. Even if all the merchandise covered by these two cases had been second, third, fourth, or any other inferior grade or quality of merchandise, there was nothing to prevent the agent of the

importer from sorting, grading, packing, and shipping every single hat he bought off the donkey's back, save those with holes in them. This is exactly what the record shows the agent did in this case.

The evidence in these two cases conclusively shows that the merchandise was of an inferior grade or quality to that which was shipped to St. Louis by San Martin, upon which the appraiser testified he based his appraisement in these cases. For example, in reappraisement No. 113934–A, there was nothing to prevent the agent from sorting and grading all the Anisero Charrito #11 hats and placing them together, and likewise with the remaining hats on the invoice in this case, and also those in reappraisement No. 113933–A, and it is not at all illogical that he did so. Such service is usually required of agents or commissionaires.

With all the hats in these two cases thrown together and indiscriminately mixed at the time they were purchased off the donkey's back, the Government offered no evidence to show that any of these inferior hats were thrown out and other hats of a better grade or quality substituted to bring them up to the grade or quality of the hats shipped by San Martin.

The record in this case shows that Tehuacan is one of the principal markets in Mexico for hats such as or similar to the hats in these two cases, and the record also shows that the quantities shown on these invoices come well within the quantities shown by the record to be usual wholesale quantities. The record also shows that the export value of hats such as or similar to the hats in question was higher than the foreign value, and that the market values at or about the dates of exportation of such merchandise to the United States at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Mexico in usual wholesale quantities and in the ordinary course of trade, were the values hereinafter set out.

As to the hats invoiced as Anisero AA Verde, Anisero AA Standard, Anisero G. AA. Verde, #11, and Anisero Standard AA #11, the evidence fails to establish any value, and therefore, as to these items of merchandise, the appraised values are affirmed.

After a careful examination and consideration of all the evidence before us, we find as a fact:

1. That the merchandise covered by these two appeals consists of straw hats imported from Tehuacan, Mexico, and entered at the port of St. Louis on May 11 and May 25, 1936, respectively, by the appellant herein.

2. That Tehuacan, Mexico, is one of the principal markets for the sale of such or similar merchandise.

3. That the quantities shown on these two invoices are well within the quantities shown by the record to be usual wholesale quantities.

4. That the merchandise was freely offered for sale to all purchasers in the principal market of Mexico, in the usual wholesale quantities and in the ordinary course of trade.

5. That the proper dutiable export values of the merchandise covered by appeal 113933–A are as follows: Anisero Charrito, $7.25; Anisero Standard, $10; Anisero Grande, Size 10½, $11.50; Anisero Grande, Size 11, $11.50; Anisero Grande, Size 11½–12, $11.50, Mexican currency per gross; plus packing as invoiced; Anisero AA Verde and Anisero AA Standard appraised values, and that the proper dutiable export values of the merchandise covered by appeal 113934–A are as follows: Anisero Charrito, #11, $7.25; Anisero Standard, #11, $10; Anisero Tlaxiaco Comm. #16, $13.50, Mexican currency per gross, plus packing as invoiced and Anisero G AA Verde, #11, and Anisero Standard AA #11, appraised values affirmed.

We, therefore, conclude as matter of law that the proper dutiable export values of the merchandise covered by these two appeals are as set out in finding of fact No. 5. The judgment of the trial court is accordingly modified. Judgment will be rendered accordingly.