WILLIAM J. OBERLE, INC. (BLUMENTHAL PRINT WORKS) v. UNITED STATES

No. 5641.—Invoices dated Courtrai, Belgium, October 28, 1938, etc.
Certified October 31, 1938, etc.
Entered at New Orleans, La., November 23, 1938, etc.
Entry No. 214, etc.

(Decided May 22, 1942)

*Isaac S. Heller* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Alfred A. Taylor, Jr.*, special attorneys), for the defendant.

CLINE, Judge: The question involved in this case is the proper dutiable value of cotton mattress tickings exported by Tissage De Courtrai of Courtrai, Belgium. Twelve cases were consolidated for trial. The invoices were certified by the American consul at various dates ranging from August 27, 1938, to April 11, 1939. In reappraisements 129777–A, 131014–A, 131016–A, 131017–A, 131021–A, 132246–A, and 132247–A the appraiser advanced the entered value of some of the items, but in reappraisements 129778–A, 129779–A, 131015–A, 131043–A, and 132245–A the importer added on entry to

meet advances made by the appraiser in similar cases pending reappraisement. There was also an addition made on entry to meet advances made by the appraiser on quality 6498, 56″ goods, on the invoices covered by reappraisements 131017–A and 131021 but some other items in those cases were advanced by the appraiser.

At the trial, reappraisement 129777–A was considered to be the initial case upon which the appraiser advanced the value. The invoice in that case, which covered entry No. 214, was certified on October 31, 1938. Reappraisements 129778–A and 129779–A cover merchandise exported on August 27, 1938, and September 30, 1938, but additions on entry were made by the importer to meet advances by the appraiser in those cases and the appraiser appraised those entries at the entered value and did not make any advance in the value of the goods.

At the beginning of the trial, counsel for the plaintiff offered in evidence the record covered by reappraisement number 120150–A which was decided in *William J. Oberle, Inc.* v. *United States*, 2 Cust. Ct. 966, Reap. Dec. 4582. Counsel for the defendant objected to the incorporation of the record in that case on the ground that, under the provisions of rule 23 of the rules of the court, the required 5 days' notice of the motion had not been given, and on the further ground that it was not shown that the merchandise in that case and the date of exportation thereof were the same as the merchandise and the date of exportation of the goods in this case. This motion was not acted upon at the trial by the judge before whom the case was tried.

The first witness called by the plaintiff was Mr. Frank H. Davis, Jr., who is the import manager of the importing firm, the Blumenthal Print Works. He testified that qualities 6498, 6500, 6535, and 6539 were covered by the shipment in reappraisement 129777–A, which is the initial case in the reappraisements herein involved, and that qualities 6498 and 6500 are identical with those received in importations received a month previously, and that they were identical in every respect, as far as construction goes, but not as to pattern, with items previously litigated in this court. The witness then testified as follows:

Q. Do you know whether the last previous importation of this merchandise was the subject of litigation in this Court?—A. I think the last one that was under subject was during the month of September. It was the same quality of goods and the same year.

    \*       \*       \*       \*       \*       \*       \*

Q. Do you know the circumstances of the importations by Blumenthal Print Works during the year 1938?—A. Yes, sir.

Q. Do you know all the details with respect to these importations?—A. Yes.

Q. I would like to ask that same question. Do you know whether these items that you have referred to in this entry are identical with items previously litigated

in this Court in September, as to thread count, design, color, and weave? Are these goods which you say are the same, identical in every respect?—A. Identical in every respect as far as construction goes, but not as far as the pattern; the same quality of cloth but the pattern is different because we change the line every year.

Q. 6498 is the same as 6497?—A. In every respect, but one pattern may have a little different design, but the cloth is the same.

Q. So that those items represented by those numbers you have testified to were the same as those which were previously imported and litigated in this Court?—A. That is 6498 and 6500. Items 6535 and 6539 wouldn't be identical but would be similar.

The witness was then asked what were the prices of the merchandise imported under 129777–A and he stated:

A. 6498 was 15 cents a yard. 6500 quality was 26¼ cents for white filler, and 27½ cents for colored filler. 6535 was 25 cents a yard. 6539 was 25¼ cents a yard.

The witness testified further that the merchandise was entered at those prices; that the merchandise was imported from Tissage De Courtrai of Courtrai, Belgium, and that he was familiar with market conditions in that neighborhood; that his firm had cabled for prices and asked for quotations on different qualities of goods from two firms in Courtrai; that he received quotations on various qualities in quantities of a few thousand yards up to 50,000 yards; that the prices for the different quantities did not vary; that there was a difference in value in the latter part of the year of about one-fourth of a cent higher but the prices started to come down in 1939; that he was familiar with cases in which the exporter offered the goods at prices different from those received by Blumenthal Print Works, such offers being made to Rudolph Deutsch; and that he had seen a list of prices offered to Deutsch and his firm communicated with the mill to ascertain the reason for the difference in price and he saw a cable from the mill stating that there was a commission involved in the prices to Deutsch. The case was then continued to the next day in order to produce the written documents referred to by the witness.

On the day of the adjourned hearing, the plaintiff called Mr. Harry Joseph Blumenthal, who is a partner in the importing firm. He testified that he was in Courtrai in Belgium in 1935 and visited two mills in that district; that since that date he had kept in touch with the conditions there through conversations with the directors of the two mills who visited the United States; that he knew that merchandise similar or identical to the tickings in these cases was not sold for consumption in Belgium, except seconds and overweaves. In explaining what he meant by overweaves he said:

For instance, when we purchase, let us say, 10,000 yards and they weave 11,000, they can dispose of that 1,000 yards over there.

On cross-examination the witness testified that he was 16 years old in 1935 and had attended, with his father, every conversation with

the mills and had kept in touch through yearly conversations with representatives of Tissage De Courtrai who had come to this country every year since 1935; that his firm took the entire output of the mill and he knew there was nothing available for sale elsewhere; that he knew that Golding Brothers of New York had some customs cases involving similar merchandise but he did not know the nature of their cases; that he did not visit all of the mills in Courtrai in 1935 when he was there and did not know whether the other mills manufactured similar goods or whether they freely offered merchandise for sale in the home market.

Mr. Frank H. Davis, Jr., was recalled and produced a letter from Tissage De Courtrai, dated July 12, 1939, attached to which were copies of two additional letters. These letters were received in evidence and marked collective exhibit 1. He produced also a letter from Tissage La Flandre, dated November 3, 1938, which was admitted in evidence and marked exhibit 2. He produced also two radiogram communications, one signed "Flandre" and the other unsigned, and three telegrams, dated February 25 and March 2 and 7, 1939, signed with the name "Camille Verwee." These documents were received in evidence and marked collective exhibit 3. The witness testified that Camille Verwee is the managing director of Tissage La Flandre; that these telegrams were offers but they were not accepted because of the length of time for delivery; that about 50,000 or 60,000 yards of qualities 6498 and 6500 were purchased and that other qualities were purchased in small quantities, but the amount of sale made no difference in the price.

On cross-examination the witness testified that he had never been to Courtrai, Belgium; that he did not know of any special arrangement which Blumenthal Print Works had with the manufacturer; that the market varied one-fourth or one-half cent per yard; and that he entered all of the merchandise at the invoice prices.

The defendant called Mr. Edwin B. Kirwin, who is a customs examiner at the port of New Orleans, who testified that he verified the merchandise and appraised it. He identified a certified copy of a report, dated December 29, 1938, signed by "C. W. Webb" to which is attached a photostatic copy of a letter to the appraiser at New York and a price list. These documents were received in evidence and marked collective exhibit 4. The witness testified that the basis of his appraisement was export value and that the appraisement was based on the price list attached to exhibit 4.

In answer to questions by the judge presiding at the trial, the witness testified that he did not seek to ascertain whether there was a foreign value for the merchandise; that he submitted the invoices to the appraiser at New York and made the appraisements in accordance with the information obtained from that source.

On cross-examination the witness testified that he did not investigate the market conditions in Europe; that the price list was in Belgian francs per meter and he did not convert the values into United States dollars; that he appraised the merchandise in Belgian francs per meter; that he used the price list in appraising all the items which he advanced; and that he did not know that the prices fluctuated but every time an entry was made he referred it to the Customs Information Exchange at New York and was informed to make the appraisement according to the price list.

The plaintiff recalled Mr. Frank H. Davis, Jr., who testified that he made a memorandum in which he tried to figure the difference between the price list and the prices his firm paid for the merchandise and there was a variation of about 2 per centum which he assumed was the commission involved in the quotations to Mr. Rudolph Deutsch. The computation of the witness was admitted in evidence and marked exhibit 5. There was introduced also, as exhibit 6, a document showing the rate of exchange of the currencies of different countries on August 13, 1938, and August 15, 1938, which the witness used in converting the currency.

On cross-examination the witness testified that all of the merchandise was invoiced in United States dollars; that some of it was appraised in Belgian francs and some at the invoice prices; that in converting the currency in his computations in exhibit 5 he did not attempt to determine the value of the franc at the date of exportation; that there was about 1 per centum difference in value in the franc between that shown on exhibit 6 and the actual value on the date of exportation; that all of the purchases are made by Blumenthal Print Works in United States dollars and the bills are paid by check.

Exhibit 1 includes a letter from Tissage De Courtrai to Blumenthal Print Works, dated July 12, 1939, and two carbon copies of letters, one to Mr. Christ, dated July 12, 1939, and the other to Messrs. Rudolph Deutsch & Co., bearing the same date. These letters refer to a quotation on quality 6498 on April 14, 1939, which is subsequent to the latest shipment covered by the cases herein involved and are therefore of no value as evidence for the purpose of determining value in this case. Reference is made in these letters to a commission of 2 per centum included in the shipments to Messrs. Rudolph Deutsch & Co. The letter to Mr. Christ contains the following:

You will therefore see that the price of 4.75 frs per meter we quoted Mr. Deutsch on April 14th for quality 6498 is equivalent to 14.31¢ per yard and this is equal to 14.02¢ per yard if we deduct the 2% commission our agent Mr. Deutsch gets on the low goods.

Will you therefore be kind enough to see that Messrs. Blumenthal Print Works, who buy from us direct, pay their duty on the basis of 14¢ per yard which is fair and correct.

Exhibit 2 is a letter from Tissage La Flandre, dated November 3, 1938, quoting prices on goods manufactured by that firm. The particular qualities involved in this case are not mentioned in this exhibit and there is nothing in the record showing that the goods herein involved are similar to those the prices of which are quoted. Therefore the exhibit is of no value as evidence in the case.

Exhibit 3, which contains two radiogram communications and three telegrams, is subject to the same criticism as the letter in exhibit 2. There is nothing in the exhibit containing reference to the qualities herein involved.

Collective exhibit 4 contains a price list of Tissage De Courtrai, the shipper in this case, dated October 15, 1938, which is within the period covered by the importations herein involved.

The trial judge before whom the case was presented discovered that counsel for the plaintiff had not renewed his motion to incorporate the record in reappraisement 120150–A after giving the required 5 days' notice to the defendant and he restored the case to the calendar in order that a valid motion to incorporate the record could be made.

When the case came on the calendar again, the proper notice was given to counsel for the defendant and the motion to incorporate the record in the previous case was renewed. Counsel for the defendant objected to the incorporation of the record on the ground that the dates of exportation of the merchandise in the case cited were different from the dates of exportation of the shipments herein involved and the objection was taken under advisement.

It appears from an examination of the decision in reappraisement 120150–A (*William J. Oberle, Inc.* v. *United States, supra*) that the date of the last exportation in that case was September 28, 1937, and that the issue in the two cases is different. This is apparent from the following excerpts from the decision of the court in the case cited:

These appeals for reappraisement involve the value of certain damask mattress tickings imported from Tissage De Courtrai and Tissage La Flandre of Courtrai, Belgium, during a period between November 5, 1936 and September 28, 1937. * * *

There are about twenty different qualities of damask tickings covered by these cases and in those qualities there are about fifty or sixty different patterns. The appraiser returned all the items, except No. 6382, at the United States value. A number of the cases cover duress entries in which the importer advanced the values to meet advances made by the appraiser in the test cases.

In his opening statement, counsel for the plaintiff admitted that if the merchandise is dutiable at the United States value the prices found by the appraiser for the items are correct and counsel for the defendant admitted that if the merchandise is dutiable at the export value the invoice prices are correct. * * *

Counsel for the plaintiff asserted at the trial that the issue in the two cases was the same and that the date of the last importation in the previous case was June, 1938, and the date of the first importation

in this case is August, 1938. It is apparent that counsel erred in his statement that the date of the last importation in the litigated case was June, 1938. The testimony of witness Davis on the same point is misleading also. He stated that qualities 6498, 6500, 6535, and 6539 covered by the initial reappraisement, 129777–A, which covers merchandise imported on November 23, 1938, were identical or similar to items previously litigated in this court and that the last importation of the merchandise subject to litigation was during the month of September of the same year. An examination of the record in reappraisement 129777–A shows that qualities 6500 and 6539 were not advanced by the appraiser in that case. We note, however, that quality 6500 was advanced in subsequent appraisements, namely, on the invoices covered by reappraisements 131014–A, 131016–A, and 132246–A. The witness did not refer to the particular case wherein qualities 6498 and 6500, imported a short time prior to the goods the subject of reappraisement 129777–A, had been subject to litigation before the court. It is noted, however, that although quality 6498 appears on the invoice covered by the importation of October 22, 1938, in reappraisement 129779–A in this case, that item was not advanced by the appraiser. That shipment was received about a month prior to the importation covered by reappraisement 129777–A which is referred to as the initial case by counsel in this case. Furthermore, qualities 6498 and 6500 both appear on the invoice covered by reappraisement 129778–A in the instant case which covers an importation entered on September 16, 1938, but the importer made an advance on the entry in that case to meet advances by the appraiser on entry 2685, quality 6498, 64-inch goods, being entered at $0.1907 per yard and 6500, 56-inch goods, at $0.2793 per yard on the basis of United States value. Evidently the witness was confused when he testified that the same qualities received during the month of September, 1938, had been the subject of litigation because the two importations to which he evidently referred are covered by the cases herein involved.

The customs examiner, who testified in the case now under consideration, stated that all the advances he made were on the basis of export value. In *William J. Oberle, Inc.* v. *United States, supra*, the merchandise was appraised by the appraiser on the basis of United States value and the court held that all of the qualities, except one, should be appraised on the basis of export value. It is manifest that the issue in the two cases is different and that the dates of exportation in that case are too remote to make the evidence the plaintiff seeks to introduce applicable to shipments herein involved. In *United States* v. *Titan Shipping Co., Inc.*, 27 C. C. P. A. 178, C. A. D. 82, the court held that evidence of sales in 1927 and 1928 was not applicable for the purpose of determining the value of merchandise shipped during the period from June 12, 1929, to April 2,

1930. The defendant's objection to the incorporation of the record is sustained, exception being granted to counsel for the plaintiff.

As the appraisement in this case was made on the basis of export value and as the plaintiff claims that the invoice values are the export values, the only question involved is whether the plaintiff has established an export value different from that found by the appraiser.

I have reviewed the evidence in detail and find nothing therein sufficient to establish that the invoice values are the export values of the merchandise. In fact, the only competent evidence introduced in the case is that contained in the price list in exhibit 4. The evidence shows that the appraisement was based on that price list.

The courts have held that price lists are competent evidence, *May Co. et al.* v. *United States*, 17 C. C. P. A. 190, T. D. 43644; *United States* v. *Baldwin Universal Co.*, 18 C. C. P. A. 394, T. D. 44641; *International Harvest Hat Co.* v. *United States*, 5 Cust. Ct. 592, Reap. Dec. 5045. The plaintiff urges, however, that the prices on the price list include a commission of 2 per centum, but it is manifest that, if the merchandise was offered to other customers with an added commission of 2 per centum included, it cannot be said that it was (using the language of section 402 (d) of the Tariff Act of 1930) "freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States" at the prices shown on the invoice which admittedly do not contain an addition for commission. Export value is the price to *all* purchasers. If one purchaser buys at a lower value than other purchasers, the price he receives is not the value that all purchasers secure. *United States* v. *Mexican Products Co.*, 28 C. C. P. A. 80, C. A. D. 129.

As the qualities of merchandise which the appraiser advanced were appraised on the basis of export value, and, according to the provisions of section 501 of the Tariff Act of 1930, the appraisement has the presumption of correctness, it must be assumed that there was no foreign value for the merchandise, or, if there was, it was lower than the export value. At any rate, the testimony of witness Blumenthal indicates that there was no foreign value because he testified that he knew that similar merchandise was not sold in the markets of Belgium for home consumption.

I find the following facts:

1. The merchandise was not sold for home consumption in Belgium at prices higher than the export value.

2. As to the qualities of mattress ticking which the appraiser advanced in value or which were entered at advanced prices to meet the export values found by the appraiser in the test case, the prices at which the merchandise was freely offered for sale to all purchasers

in the principal market of Belgium for exportation to the United States in the usual wholesale quantities and in the ordinary course of trade are the values found by the appraiser.

3. As to the merchandise covered by reappraisement numbers 129778–A and 129779–A which was advanced on entry to meet advances made by the appraiser on the merchandise covered by entries 2660 and 2685, there was no evidence produced by the plaintiff to overcome the presumption of correctness attaching to the appraisement.

I hold that the export value is the proper basis of appraisement of the merchandise covered by finding 2 and that such export values are as indicated in that finding. I hold further that the reappraisement appeals covered by finding 3 be dismissed. Judgment will be entered accordingly.